[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14316
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-00368-CG-N-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PRASTANA TAOHIM,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(July 30, 2013)

Before TJOFLAT and CARNES, Circuit Judges, and EVANS,* District Judge.

PER CURIAM:

_____

* Honorable Orinda D. Evans, United States District Judge for the Northern District of Georgia, sitting by designation.

Prastana Taohim appeals his convictions for obstruction of proceedings before an agency, in violation of 18 U.S.C. § 1505, and destruction, alteration, or falsification of records in a federal proceeding, in violation of 18 U.S.C. § 1519. Taohim contends that there was insufficient evidence to convict him and that, even if there was enough evidence, he is entitled to a new trial for other reasons.

I.

The United States is a party to an international agreement that regulates the discharge of garbage from vessels at sea:  the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (collectively referred to as "MARPOL").  MARPOL has been implemented in the United States by the Act to Prevent Pollution from Ships, 33 U.S.C. §§ 1901–1915. Together, the Treaty and the Act prohibit vessels from throwing plastic overboard. MARPOL Annex V, Reg. 3(1)(a); 33 U.S.C. § 1902(a)(3).  They also require that vessels keep a "garbage record book," which is a written record of the date, time, and volume of all garbage discharges and the latitude and longitude of all discharges at sea.  MARPOL Annex V, Reg. 9(3)(a); 33 C.F.R. § 151.55.  The vessel's officer in charge must record each discharge in the garbage record book on the date of discharge, and the captain must sign each completed page.  33 C.F.R. § 151.55.  The book must be maintained on the vessel for two years following the

2

discharge and must be made available for inspection by the United States Coast Guard.  Id.

Taohim was the Captain of the M/V Gaurav Prem, a cargo vessel operated and managed by Target Ship Management.  Joel Atiga, the Chief Officer, was responsible for recording each garbage discharge in the garbage record book so that Taohim could review and sign it.

On August 6, 2011, while the vessel was sailing for Panama, Captain Taohim ordered Chief Officer Atiga to throw some plastic pipes overboard.  Atiga responded, "Sir, throwing the plastic into the sea is prohibited, and you know that." Taohim said, "Just follow my orders."  Taohim also told Atiga not to record the discharge of the plastic into the garbage record book.  Atiga did not order the crew to throw the plastic overboard that day because he knew that it was illegal.  The next day, Taohim asked Atiga if he had thrown the pipes overboard, and he responded, "Not yet."  Taohim again told Atiga to follow his orders, and, fearing he would be charged with insubordination and fired at the next port, Atiga ordered the crew to throw the plastic pipes overboard.  The crew did that, as photographs introduced into evidence at trial show the pipes being thrown overboard.

From Panama, the vessel sailed to Mobile, Alabama and docked there in September 2011.  The United States Coast Guard conducted a Port State Control Inspection, which is routinely done to verify that foreign vessels are complying

with conventions governing safety, pollution, cargo, and labor.  While checking the

vessel's compliance, the Coast Guard interviewed crew members and reviewed the

records, including the garbage record book.  During that inspection, two

crewmembers approached the Coast Guard officers and told them there was illegal

activity onboard.  The Coast Guard then interviewed other crew members who

stated that they had been directed to throw plastic pipes overboard.  The garbage

record book, however, did not reflect any discharge of plastics overboard.

A grand jury issued a seven-count indictment against Taohim, Target Ship

Management, and two other codefendants.  Count One charged that Taohim

corruptly influenced a Coast Guard proceeding by presenting the vessel's false

garbage record book, in violation of 18 U.S.C. § 1505.  Count Four charged that

Taohim knowingly caused the omission of information in the garbage record book

with the intent to influence a Coast Guard investigation, in violation of 18 U.S.C. §

1519.  At Taohim's trial, which was severed from that of his codefendants, Chief

Officer Atiga testified that Taohim told him to throw the plastic overboard and to

omit that discharge from the garbage record book.  Taohim testified on his own

behalf and denied telling any crewmembers to throw the pipes overboard.  After

the government's case in chief and again at the close of all the evidence, Taohim

moved for a judgment of acquittal on both counts against him under Federal Rule

4

of Criminal Procedure 29, and the district court denied those motions. The jury found him guilty on both counts.

In May 2012 Taohim filed a motion for a new trial based on allegedly improper comments made by the prosecutor during his closing argument. Taohim argued that the prosecutor improperly invoked religion, misstated Taohim's testimony, and made improper and misleading references to whistleblowers. The district court denied that motion.

Also in May 2012, Target Ship Management and the other two codefendants pleaded guilty to the counts against them. The court imposed, among other things, a $1,200,000 monetary penalty against Target Ship Management. On June 25, 2012, the government filed a motion asking the court to order that seven crewmembers who provided information leading to the successful prosecution of Target Ship Management be awarded $250,000 to be divided among them as whistleblower payments under 33 U.S.C. § 1908, and the court granted that motion. Four of the seven crewmembers who received whistleblower awards in the severed proceedings had testified at Taohim's trial.

On June 29, 2012, Taohim filed a motion in which he argued that a new trial was required based on "newly discovered evidence" that four of the witnesses who testified at his trial had received whistleblower awards for their testimony against Target Ship Management. The district court denied that motion, reasoning that the

5

evidence was "merely impeaching evidence which was not material and would not have changed the result of the trial." Taohim appeals his convictions and the district court's denial of his motions for a new trial.

## II.

Taohim contends that the government did not present enough evidence to convict him on either count. "We review de novo a district court's denial of a motion for judgment of acquittal on sufficiency of evidence grounds." United States v. Pena, 684 F.3d 1137, 1152 (11th Cir. 2012). "In reviewing the sufficiency of the evidence, we look at the record in the light most favorable to the verdict and draw all reasonable inferences and resolve all questions of credibility in its favor." United States v. White, 663 F.3d 1207, 1213 (11th Cir. 2011) (quotation marks omitted). "[W]e will not disturb a guilty verdict unless, given the evidence in the record, no trier of fact could have found guilt beyond a reasonable doubt." United States v. Hill, 643 F.3d 807, 856 (11th Cir. 2011) (quotation marks omitted).

## A.

Under 18 U.S.C. § 1505, it is a crime to "corruptly . . . influence[], obstruct[], or impede[] or endeavor[] to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States." The term "corruptly"

means "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information."  18 U.S.C. § 1515(b). The jury in this case was instructed that the government had to establish three elements to support a conviction under § 1505:  (1) that there was a pending agency proceeding; (2) that Taohim was aware of that proceeding; and (3) that Taohim "intentionally endeavored corruptly to influence, obstruct, or impede the pending proceeding."

Taohim contends that the government failed to present evidence establishing the third element — that he "intentionally endeavored corruptly" to obstruct the Coast Guard's proceeding.  He argues that he "could not have had 'corrupt' intent" to influence the Coast Guard's investigation because it "was not even pending at the time the alleged omissions in the garbage record book allegedly should have been recorded."  Taohim, however, was not convicted of intentionally failing to record the discharge in the garbage record book.  He was convicted of intentionally obstructing an agency proceeding by presenting a garbage record book that he knew was false because it omitted some entries, and there was enough evidence to support the jury's verdict on that count.

Chief Officer Atiga testified that Taohim ordered him to throw plastic pipes overboard and to omit that discharge from the garbage record book.  Atiga also

7

testified that he told Taohim that it was illegal to throw plastic into the sea, and Taohim ordered him to do it anyway. Atiga further testified that before arriving in the port of Mobile, Taohim asked to see the garbage record book, and Atiga delivered it to his cabin. Coast Guard Petty Officer Gregory Spring testified that the garbage record book was made available for the Coast Guard to inspect and that his initial review did not show any plastic discharges overboard. From that testimony, the jury reasonably could have inferred that Taohim knew that the garbage record book did not include the discharge of plastic into the sea and that he made that fraudulent book available to the Coast Guard with the intent to interfere with its investigation, in violation of 18 U.S.C. § 1505.

Moreover, "when a criminal defendant chooses to testify on his own behalf, his statements, if disbelieved by the jury, may be considered as substantive evidence of his guilt." United States v. Kendrick, 682 F.3d 974, 985 (11th Cir. 2012). Taohim testified that when the Coast Guard came aboard the ship, he did not know that the plastic pipes had been thrown overboard and that the discharge had not been recorded in the garbage record book. He also testified that he "never" had any intention to "fool" the Coast Guard. Because the jury returned a guilty

verdict, it clearly did not believe those statements, which may be considered substantive evidence of Taohim's guilt. [1]

Taohim also argues that the government failed to show corrupt intent because Chief Officer Atiga testified that before the Coast Guard's inspection, Taohim told him that the garbage book "should be filled up properly." But as we have already discussed, Atiga also testified that Taohim had clearly told him that he should omit any record of the illegal plastic discharge from the garbage record book. And Taohim testified that he did not tell any crew members to throw the pipes overboard and that he was not responsible for making entries into the garbage record book which, if disbelieved by the jury, may be considered as substantive evidence of his guilt. See Kendrick, 682 F.3d at 985.

From all of the testimony, the jury could reasonably have inferred that Taohim intended for the book to contain no record of the plastic discharge, notwithstanding his later statement about making sure the book was "filled up properly" before the inspection. The jury was entitled to make a credibility determination on this point, and obviously did.

---

[1] Taohim argues that the intent to corruptly influence an agency's proceeding could not have existed at the time the garbage record book was presented to the Coast Guard because that presentation "is a ministerial act required by law, and done without specific intent." We disagree. Even if presenting the garbage record book was a "ministerial act" required by law, the law did not require Taohim to present the garbage record book without disclosing that an entry had been omitted. The government presented evidence showing that Taohim knew the book was inaccurate when he presented it to the Coast Guard and that he did not disclose its inaccuracies, from which a reasonable jury could conclude that he intended to interfere with the Coast Guard's investigation.

Taohim further argues that the dumping of the plastic pipes and the omission of that dumping from the garbage record book happened while the vessel was sailing from South Korea to Panama, which is beyond the jurisdiction of the United States. Even if we assume, without deciding, that those events were "beyond the jurisdiction of the United States," Taohim still presented a false garbage record book intending to interfere with a pending proceeding of the Coast Guard — the crime of which he was convicted — in the port of Mobile, Alabama.

### B.

Under 18 U.S.C. § 1519, it is a crime to "knowingly alter[], destroy[], mutilate[], conceal[], cover[] up, falsif[y], or make[] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation . . . of any matter within the jurisdiction of any department or agency of the United States . . . or in relation to or contemplation of any such matter or case." Count Four of the indictment charged that Taohim knowingly caused the omission of information in the garbage record book with the intent to influence an agency proceeding in violation of § 1519, and the jury convicted him of that crime.

Taohim argues that he could not have intended to impede, obstruct, or influence the Coast Guard's investigation when he allegedly ordered the omission of the plastic discharge from the garbage record book because at that time, the vessel was outside the territory of the United States and no investigation was

10

pending. Section 1519, however, does not require that an investigation be pending or that the defendant be aware of one when he falsifies the record. Instead, the statute only requires that the falsification be done with intent to impede an investigation and "in contemplation" of that investigation. See 18 U.S.C. § 1519. A jury rationally could have concluded, as the one in this case obviously did, that Taohim anticipated that the garbage record book would be reviewed in a future agency proceeding and that he ordered it falsified for that reason. Cf. United States v. Kernell, 667 F.3d 746, 755 (6th Cir. 2012) ("[T]he belief that a federal investigation directed at the defendant's conduct might begin at some point in the future satisfies the 'in contemplation' prong."). Jang Jit Singh Yadav, an independent consultant for Target Ship Management, testified that Taohim is an "old sea dog" who was "quite aware that most ports these days are very strict about the Port State Control" Inspections. Yadav also testified that Taohim was "very well" aware that the garbage record book would be reviewed during any Port State Control Inspection. It was the jury's prerogative to credit that testimony and infer that Taohim ordered that the garbage record book be falsified "in contemplation of" a future Port State Control Inspection. [2]

---

[2] Taohim also contends in his brief to this Court that he was not responsible for falsifying the garbage record book because that book "was the sole responsibility of Chief Officer Atiga." Taohim admitted in his trial testimony that one of his responsibilities as captain was to "ensure that there [were] proper entries in the garbage log." But he also testified that it was the Chief Officer's responsibility to make entries into the garbage record book and that he had "no way to know" about issues with the garbage record book unless the Chief Officer reported those issues

11

III.

Taohim also contends that the district court erred in denying his motion for a new trial. "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). We review for abuse of discretion the district court's denial of a motion for a new trial. United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003).

A.

Taohim contends that he is entitled to a new trial based on newly discovered evidence. He notes that after his conviction, he learned that four of the crewmembers who testified at his trial received monetary awards for providing information to the Coast Guard that led to the successful prosecution of Target Ship Management. Taohim argues that the awards are evidence of the witnesses' motives and that he was not able to cross-examine those witnesses about the awards during his trial. He does not, however, contend that the payments were promised or made before the end of his trial.

A new trial based on newly discovered evidence is warranted if the defendant satisfies a five-part test:

> (1) the evidence must be discovered following the trial; (2) the movant must show due diligence to discover the evidence; (3) the

---

to him. The jury decided not to credit his later statement, and we will not disturb that credibility determination on appeal. See Owens v. Wainwright, 698 F.2d 1111, 1113 (11th Cir. 1983).

evidence must not be merely cumulative or impeaching; (4) the evidence must be material to issues before the court; and (5) the evidence must be of such a nature that a new trial would probably produce a new result.

United States v. DiBernardo, 880 F.2d 1216, 1224 (11th Cir. 1989). Failure to satisfy any one of those elements is fatal to a motion for a new trial. United States v. Lee, 68 F.3d 1267, 1274 (11th Cir. 1995). The district court concluded that the first two elements were satisfied, but that the newly discovered evidence was merely impeaching, not material, and not likely to have changed the result of the trial.

Taohim concedes in his reply brief that "evidence of a witness's bias or motive is considered impeachment evidence," but also argues that the evidence is not "merely" impeaching because it "highlights the Sixth Amendment Confrontation Clause violations that occurred" during his trial. Specifically, he contends that he was denied a full and fair opportunity to cross-examine the four witnesses about inducements made by the prosecutors in exchange for their testimony and their subjective belief that they would be entitled to a reward for cooperating with the government. The record, however, does not support that contention.

Before trial, Taohim, through counsel, filed a motion asking the court to take judicial notice that the government routinely asks courts to approve payments to whistleblowers. The court denied that request, noting that those payments are not

13

"an appropriate thing to take judicial notice of."  At trial, Taohim attempted to ask Coast Guard Captain Donald Rose whether he received a report that there was a whistleblower onboard the vessel.  The government objected, and the court informed Taohim during a sidebar that he could ask any testifying whistleblower if he made a report or had any motive to testify, but if he did raise the subject of the whistleblower's report, he would open the door to questions by the government about the report, which contained some facts that Taohim did not want the jury to hear.  The record does not show that Taohim attempted to ask the testifying whistleblowers whether they expected to receive a monetary award for their testimony.  He cannot use his failure to ask to establish a Sixth Amendment violation.

Because the evidence of the whistleblower payments was merely impeaching evidence, it is not the type of evidence that warrants a new trial.  See DiBernardo, 880 F.2d at 1224.  The evidence is also not material and would not likely produce a different result if a new trial were granted.  Three of the crewmembers testified about the location of the plastic pipes, and one stated that the pipes disappeared while the vessel was travelling to Panama.  The fourth crewmember testified that he threw some of the pipes overboard.  That testimony was corroborated by photos of the pipes being thrown into the sea and by the testimony of Chief Officer Atiga, who did not receive a whistleblower payment.

14

And Taohim testified that he never saw the pipes and did not tell any crew members to throw them into the sea. Taohim's testimony, if disbelieved by the jury, may also be considered substantive evidence of his guilt. See Kendrick, 682 F.3d at 985. The district court was correct in concluding that the evidence in this case was strong and the evidence of whistleblower payments after the trial would not have changed the result.

B.

Taohim also contends that he is entitled to a new trial because the prosecutor engaged in misconduct by making improper statements to the jury during closing arguments. A prosecutor's statements to the jury constitute misconduct only if: (1) the remarks were improper, and (2) the remarks prejudicially affected the substantial rights of the defendant. United States v. Thompson, 422 F.3d 1285, 1297 (11th Cir. 2005). "In order to assess the prejudicial impact of a prosecutor's statements, we must evaluate them in the context of the trial as a whole and assess their probable impact on the jury." United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998). To warrant a new trial, there must be a reasonable probability that "but for the remarks, the outcome would be different." United States v. Hall, 47 F.3d 1091, 1098 (11th Cir. 1995).

Because Taohim did not object to the allegedly improper statements at the time they were made, we review his claim under the plain error standard. United

15

States v. Merrill, 513 F.3d 1293, 1306–07 (11th Cir. 2008).  Under that standard, a defendant must show that "(1) an error occurred; (2) the error was plain; (3) it affected [his] substantial rights; and (4) it seriously affected the fairness of the judicial proceedings."  United States v. Rodriguez, 627 F.3d 1372, 1380 (11th Cir. 2010) (quotation marks omitted).

Taohim first asserts that the prosecutor improperly invoked religion when he said, "So give me strength that I say the right words, that I make the right points." He argues that the prosecutor "was clearly playing to the passion and prejudice of the [j]ury, by seeking to have the [j]ury identify with a common Judeo-Christian archetype" in a trial "against a foreign national defendant from Thailand."  The prosecutor's statement, however, did not refer to any specific higher power, and Taohim's religion was never discussed at trial.  Moreover, the court instructed the jury to perform its duty objectively without sympathy or prejudice against the defendant.  The prosecutor's statement does not amount to misconduct and was not error, plain or otherwise.

Taohim next asserts that the prosecutor misstated Taohim's testimony when he said, "Ladies and gentlemen, I ask that you use your common sense and that you use your life experience.  Is anyone lying?  Captain Taohim, my notes, my recollection, says those pipes were not on the deck."  Taohim argues that the prosecutor "misstated" his testimony because he testified only that he did not "see"

16

the pipes on the deck, not that they weren't there. The prosecutor, however, was not attempting to quote Taohim's testimony when he made that statement. Instead, he was suggesting that Taohim was lying about whether the pipes were ever on the deck, which is the inference the jury could have drawn from Taohim's statement that he never saw the pipes on the deck. See United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984) (noting that in closing argument, an attorney is permitted "to state his contention as to the conclusions that the jury should draw from the evidence."). And Taohim's counsel responded to the prosecutor's statement in his own closing argument by saying, "The captain never said they weren't there. What he said was he didn't see them there. That's different." In context, the prosecutor's statement was not error, plain or otherwise.

Taohim further asserts that the prosecutor made an improper statement "by bringing up the defense's theory of motivation and the potential bias of the government's witnesses." Specifically, the prosecutor told the jury:

> Let's look at the different theories that the defense has had. Sometime during the trial the theory has been the Filipinos, the Filipinos, the Filipinos. At one time there was a whistle blower theory. I remember whistle blower coming out. He's argued that it was Atiga, Atiga, Atiga and then this is a frame job, this is a frame job.

Taohim argues that it was "inappropriate" for the court to allow the government to refer to whistleblowers because it had denied his motion to take judicial notice that the government routinely asks courts to approve payments to whistleblowers, and

17

had sustained the government's objection to his questioning of Coast Guard

Captain Rose about the presence of whistleblowers on the ship.  As we have

already discussed, the court did not prohibit Taohim from questioning the

whistleblowers about their motives — he could have asked them, but chose not to

do so.  The court committed no error in allowing the government to mention

whistleblowers in its closing argument.

   **AFFIRMED.**[3]

---

[3] This case was originally scheduled for oral argument but was submitted on the briefs and record by unanimous consent of the panel.  See 11th Cir. Rule 34–3(f).

   Appellant's motion to move the date of oral argument is DENIED AS MOOT.