[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12829
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20639-FAM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISABEL MARTINEZ,

Defendant-Appellant.

_____

No. 15-12941
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20639-FAM-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARTHA PARKER,

                                        Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(January 18, 2017)

Before TJOFLAT, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

In this multi-appellant appeal, Martha Parker appeals her conviction for

conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and three

counts of bank fraud, in violation of 18 U.S.C. § 1334(1) and (2).  Parker argues

that the government failed to present sufficient evidence that she knew of and

intended to participate in the scheme to defraud banks and, accordingly, the district

court committed reversible error in failing to grant her motion for summary

judgment of acquittal.

Isabel Martinez appeals her conviction and sentence for conspiracy to

commit bank fraud, in violation of 18 U.S.C. § 1349, and four counts of bank

fraud, in violation of 18 U.S.C. § 1334(1) and (2).  Martinez argues, first, that the

district court plainly erred in trying her jointly with Parker, thereby violating her

Sixth Amendment rights, because a misjoinder of both the charges in the

2

indictment and of the parties occurred and denied her a fair trial. Specifically, she argues that the indictment charged two separate conspiracies involving the same *modus operandi* but different people and entities, and that Parker was the only individual charged in both. She argues that there was only one transaction involving both herself and Parker charged in the indictment, and because the two women did not know each other or knowingly transact business with each other, their association was largely accidental. She argues that, even if the defendants were not misjoined, they should have been severed to avoid prejudice under Federal Rule of Criminal Procedure 14(a) because the quantum of evidence at trial was significantly greater against Parker than against herself. Secondly, Martinez argues that the district court abused its discretion in sentencing her to 84 months' imprisonment when Parker received a minor-role reduction and only 46 months' imprisonment, and Cesar Alvarez Munoz, the acknowledged hub of the conspiracy, received a 36 month sentence. Martinez argues that the district court specifically noted her "cavalier" attitude at trial and improperly considered that when imposing sentence.

Martinez and Parker were named, along with four other co-defendants, in a 15-count indictment. Parker was charged with one count of conspiracy to commit bank fraud, three counts of bank fraud, and one count of wire fraud. Martinez was charged with same conspiracy count as Parker and one of same bank-fraud counts,

3

as well as with three separate counts of bank fraud.  The indictment alleged, in relevant part, that Martinez, Parker, and their co-defendants conspired to defraud various financial institutions by using unqualified "straw buyers" to purchase and finance residential properties in Florida and then divert the funds for their own benefit.  It charged that Parker, a licensed real estate agent and mortgage broker, recruited straw buyers with good credit to serve as qualifying mortgage applicants for fraudulent purchase and financing of the properties; that fraudulent documents were prepared and submitted to lenders to induce them to fund mortgage loans to finance the purchase of the properties; and that Martinez, a licensed title agent and mortgage broker, prepared or caused to be prepared fraudulent closing statements in furtherance of the conspiracy.  Martinez and Parker both pled not guilty and proceeded to a joint trial.  A jury found Martinez guilty of all five counts against her.  The same jury found Parker guilty of the conspiracy and bank fraud counts against her, and not guilty of wire fraud.  We will address each of their arguments in turn.

Parker

We review a challenge to the sufficiency of the evidence supporting a criminal conviction *de novo*, examining the evidence in the light most favorable to the government and drawing all reasonable inferences and making all credibility choices in the government's favor.  *United States v. Silvestri*, 409 F.3d 1311, 1327

4

(11th Cir. 2005).  The relevant question is whether a reasonable jury could have concluded that the evidence established the defendant's guilt beyond a reasonable doubt.  *Id*.  We "will not disturb a guilty verdict unless, given the evidence in the record, no trier of fact could have found guilt beyond a reasonable doubt."  *Id*. (quotations omitted).  It is unnecessary for the government "to disprove every reasonable hypothesis of innocence, as the jury is free to choose among reasonable constructions of the evidence."  *United States v. Mieres-Borges*, 919 F.2d 652, 656 (11th Cir. 1990).  "[W]hen a criminal defendant chooses to testify on [her] own behalf, [her] statements, if disbelieved by the jury, may be considered as substantive evidence of [her] guilt."  *United States v. Taohim*, 817 F.3d 1215, 1221 (11th Cir. 2013) (quotations omitted).  "The test for sufficiency of evidence is identical regardless of whether the evidence is direct or circumstantial, and no distinction is to be made between the weight given to either direct or circumstantial evidence."  *United States v. Doe*, 661 F.3d 550, 560 (11th Cir. 2011) (quotation omitted).  However, "[w]here the government relies on circumstantial evidence, reasonable inferences, and not mere speculation, must support the jury's verdict."  *Id*. (quotations omitted).

A defendant is guilty of bank fraud if she "knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned

5

by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. In tandem, 18 U.S.C. § 1349 provides that "any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 28 U.S.C. § 1349.

To sustain a conviction for conspiracy under 18 U.S.C. § 1349, the government must prove that (1) a conspiracy existed; (2) the defendant knew of the plan; and (3) the defendant knowingly and voluntarily joined the plan. *United States v. Moran*, 778 F.3d 942, 960 (11th Cir. 2015). Because a conspiracy "is predominately mental in composition, the government may prove the elements by circumstantial evidence." *Id*. The government does not need to prove that the defendant knew all of the details of the conspiracy, but only that the defendant knew of the essential nature of the conspiracy." *Id*. (quotations and citations omitted). A conviction may be upheld "when the circumstances surrounding a person's presence at the scene of conspiratorial activity are so obvious that knowledge of its character can be fairly attributed to [her]." *Id*. at 960–61.

A conviction for bank fraud under § 1344(1) requires proof that (1) the defendant "intentionally participated in a scheme or artifice to deprive another of money or property"; and (2) that the intended victim was a federally insured

financial institution. *United States v. McCarrick*, 294, F.3d 1286, 1290 (11th Cir. 2002). Similarly, a conviction under § 1344(2) requires proof that (1) a scheme existed to obtain money in the custody of a federally insured bank by fraud; (2) the defendant participated in the scheme by means of material false pretenses, representations or promises; and (3) the defendant acted knowingly. *Id*. Circumstantial evidence may prove a defendant's knowledge and intent. *United States v. Williams*, 390 F.3d 1319, 1325 (11th Cir. 2004).

Here, the district court did not err in denying Parker's motions for a judgment of acquittal because sufficient evidence existed from which a reasonable jury could have concluded that Parker knowingly participated in the fraud. *See Silvestri*, 409 F.3d at 1327. Although the evidence is circumstantial, reasonable inferences support the jury's verdict. *See Doe*, 661 F.3d at 560. As an initial matter, Parker does not contest the existence of the fraudulent scheme, or that she recruited two individuals as investors. She argues only that she did not knowingly participate in the fraud because she was unaware that the scheme, or her participation in it, was fraudulent. However, testimony shows, first, that Parker was a licensed real estate agent and mortgage broker either during or prior to the time of the fraud, and that she also had held various insurance licenses. This suggests she possessed general knowledge of the common practices and procedures of the real estate and mortgage industries. Parker's statements to a

special agent investigating the case show that Parker knew the role the straw buyers she recruited would play in the transactions, while Parker's prior experience in and knowledge of real estate and mortgage matters suggest knowledge that straw-purchaser transactions would be fraudulent.

Moreover, one of the two individuals Parker recruited to purchase real estate properties in Florida, Jose Guzman, testified that Parker knew he was a truck driver making about $13,000 when she recruited him. Yet, Parker informed him that he "qualified" to purchase three such properties. Similarly, testimony shows that the other individual, Leslie Fuentes, also a friend of Parker's, made around $30,000 per year as an administrative assistant. Parker recruited her to purchase a property for more than $500,000. According to Guzman's and Fuentes's testimony, Parker told the straw buyers that they did not need to make any down payments or invest any money of their own, and that "investors" would rent the properties and make the mortgage payments. Guzman was aware that his only role in the investment was to "put down [his] name" in exchange for the payments he received. Parker collected personal identity and financial information from Guzman and Fuentes and accompanied both of them to their first property closing. They signed the papers put in front of them without knowing their contents and lacking an explanation of what happened at the property closing.

Additionally, Guzman testified that he turned down Parker's offer to help him arrange a short-sale transaction when his properties fell into foreclosure. Yet, Parker sent an authorization form to Wells Fargo to release his loan information with a signature that Guzman testified was not his. Fuentes testified that Parker told her that Parker invested in an apartment in one of the property developments, although no evidence exists of her actually doing so. Parker contended that the money she received from the scheme was referral fees. However, testimony further showed that Parker mishandled the money she received from the scheme by accepting referral fees that went outside PRG and failing to properly report the fees in financial or tax documents, all of which provide further circumstantial evidence that Parker knew the transactions were fraudulent.

Although Parker testified that she knew nothing of the fraud, given the evidence of Parker's knowledge of the real estate and mortgage industries, the difference between the financial situations of straw buyers and the properties they qualified to purchase, Parker's awareness that her recruits would be purchasers in name only, her mishandling of her referral fees, the lack of information provided to buyers, and the fraudulent nature of the documents, it was reasonable for a jury to infer that Parker knew the essential nature of the fraudulent plan, even if she did not know all of the details, and that she intentionally participated in the plan. *See Doe*, 661 F.3d at 560; *Silvestri*, 409 F.3d at 1327; *Moran*, 778 F.3d at 960;

9

*McCarrick*, 294 F.3d at 1290.  The district court did not err in denying Parker's motion for judgment of acquittal, as the evidence presented at trial sufficiently showed that she knowingly and intentionally participated in the conspiracy to commit bank fraud when she recruited straw buyers for the scheme to defraud mortgage lenders.  Accordingly, we affirm.

### Martinez's Conviction Challenge

Because Martinez did not argue for a severance below, we review only for plain error.  *United States v. Olano*, 507 U.S. 725, 731–32 (1993).  Under plain-error review, Martinez must show (1) an error that (2) is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Id*. at 732.

Federal Rule of Criminal Procedure 8(b) provides that multiple defendants may be charged together in the same indictment if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions constituting an offense.  Fed. R. Crim. P. 8(b).  Rule 14(a) provides that, if it appears that a defendant is prejudiced by a joinder of offenses or of defendants in an indictment or a consolidation for trial, "the court may order separate trials of counts, sever the defendants' trials, or provide whatever other relief justice requires."  Fed. R. Crim. P. 14(a).

The trial court determines prior to trial whether joinder of offenses is proper under Fed. R. Crim. Pro. 8(b) based on an examination of the allegations stated on the face of the indictment. *United States v. Diaz*, 248 F.3d 1065, 1102 (11th Cir. 2001). Joinder is improper if it results in "actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *Id*. If the allegations in the indictment, taken as true, establish a single conspiracy and there is no claim of prosecutorial bad faith or an erroneous interpretation of law, then initial joinder was proper. *United States v. Morales*, 868 F.2d 1562, 1569 (11th Cir. 1989).

"Joint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources. *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *United States v. Lopez*, 649 F.3d 1222, 1233–34 (11th Cir. 2011). In this circuit, "defendants who are indicted together are usually tried together." *Lopez*, 649 F.3d at 1234. "This rule is even more pronounced in conspiracy cases …." *Id*.

To justify a severance, the defendant bears the "heavy burden of demonstrating that compelling prejudice would result from a joint trial." *Id*. "To show compelling prejudice, a defendant must establish that (1) a joint trial would

actually prejudice the defendant and (2) a severance is the only proper remedy for that prejudice—jury instructions or some other remedy short of severance will not work." *Id*.

In demonstrating prejudice, it is insufficient that the defendants "may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540. Rather, the defendant must establish that the joint trial resulted in a "specific and compelling prejudice" to her. *United States v. Liss*, 265 F.3d 1220, 1228 (11th Cir. 2001). We have held that severance may be necessary where, *inter alia*, (1) the defendants rely upon mutually antagonistic defenses, and (2) a cumulative and prejudicial "spill over" effect may prevent the jury from making an individualized determination as to each defendant because it cannot sift through the evidence as necessary. *United States v. Chavez*, 584 F.3d 1354, 1360–61 (11th Cir. 2009). The jury pronouncing different verdicts for the various defendants and counts is evidence that the jury properly sifted through the evidence to make the requisite individualized determinations as to each defendant. *United States v. Diaz*, 248 F.3d 1065, 1101 (11th Cir. 2001). We previously held that where the sheer number of defendants, charges, standards of proof, and culpability, as well as the volume of evidence, make it "nearly impossible for a jury to … assess the guilt or innocence of each defendant independently," the jury may not be able to make a reliable judgment. *Blakenship*, 382 F.3d 1110, 1124 (11th Cir. 2004).

Here, the district court committed no error in trying Martinez and Parker together.  First, the defendants were charged with the same conspiracy, in which they did not interact but nevertheless participated in the same series of transactions involving the same key players and the same *modus operandi*.  *See* Fed. R. Crim. P. 8(b); *Diaz*, 248 F.3d at 1102; *Morales*, 368 F.2d at 1569.  Both were charged with one count of bank fraud involving the same real estate transaction.  Although they were each charged with three counts of bank fraud for transactions that did not involve the other—and Parker was charged with one count of wire fraud—each transaction for which they were charged was part of the overall conspiracy.  Martinez argues that Parker's wire fraud charge involved a separate conspiracy in which Martinez was uninvolved.  She is incorrect—it was simply a different charge stemming from the same conspiracy.

Second, there is no evidence that the joinder of the two defendants resulted in any prejudice to Martinez warranting severance.  *See* Fed. R. Crim. P. 14(a); *Lopez*, 649 F.3d at 1234.  Because Martinez and Parker played roles on the opposite ends of the scheme—Parker recruited purchasers in the first instance, and Martinez closed transactions—witnesses largely testified against one defendant or the other, and the number of witnesses testifying in each defendant's case was almost even, avoiding any potential prejudicial spill-over effect.  *See Chavez*, 584 F.3d at 1360–61.  Although the transactions at issue in the case were complicated,

13

there were not so many defendants nor so much evidence that trying them together was untenable for the jury. *See Blakenship*, 382 F.3d at 1124. Indeed, presenting testimony in regard to both defendants, involving both ends of the scheme, presented a clearer picture of the overall conspiracy, which would, if anything, better ensure a fair trial. Moreover, their differing roles prevented them from relying on mutually antagonistic defenses. *See Chavez*, 584 F.3d at 1354.

Contrary to Martinez's assertion, the quantum of evidence at trial was not largely against Parker, but against Martinez, whose charges involved more witnesses and whose larger role in the overall scheme is evidenced by the fact that Parker received a minor-role reduction at sentencing while Martinez did not. Finally, the district court issued a limiting instruction telling the jury that it must consider each defendant and each charge individually. In opening argument, Martinez's counsel made the same point. Thus, any prejudice that might have arisen was remedied. *See Lopez*, 649 F.3d at 1234. The jury's acquittal of Parker of the wire fraud count, while finding the defendants guilty on other counts, further supports that the jury sifted through the evidence to make individual determinations for each charge. *See Diaz*, 248 F.3d at 1101.

Thus, the district court did not plainly error in trying the two defendants together because they were charged with the same conspiracy, involving the same

key players, a series of real estate transactions involving the same *modus operandi*, and there is no evidence that joining them resulted in any prejudice to Martinez.

## Martinez's Sentence Challenge

We review the substantive reasonableness of a sentence for abuse of discretion, a standard that "allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *U.S. v. Irey*, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (en banc). "The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3353(a) factors." *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

Under 18 U.S.C. § 3553(a), the district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2)—the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, protect the public from the defendant's future criminal conduct, and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a)(2). In imposing a particular sentence, the court must also consider the nature and circumstances of the offense; the history and characteristics of the defendant; the kinds of sentences available; the applicable guideline range; the pertinent policy statements of the Sentencing Commission; the

15

need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. *Id*. § 3553(a)(1), (3)–(7).

The weight to accord any given § 3553(a) factor is a matter committed to the sound discretion of the district court. *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008). A district court abuses its discretion and imposes a substantively unreasonable sentence when it fails to afford consideration to relevant factors that were due significant weight, gives substantial weight to an improper or irrelevant factor, or commits a clear error of judgment in considering the proper factors. *Irey*, 612 F.3d at 1190. We only vacate a sentence if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id*. The district court need not discuss or state each factor explicitly; "acknowledgement the district court has considered the defendant's arguments and the § 3553(a) factors will suffice." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). A sentence within the guideline range is ordinarily expected to be reasonable. *Id*.

Here, the district court did not abuse its discretion in imposing an 84-month sentence. The sentence fell within Martinez's advisory guideline range, so there is an expectation of reasonableness. *See Gonzalez*, 550 F.3d at 1324. The

16

record shows that the district court not only considered Martinez's arguments, but discussed them at length during the sentencing hearing. *See id.* On appeal, Martinez argues primarily that there is a disparity between her sentence and the smaller ones received by co-defendants in the case. The record shows that the district court considered the potential for sentencing disparities, explaining at sentencing that Martinez's case was not comparable to that of her co-defendants because, unlike Martinez, they accepted responsibility for their actions and did not commit perjury at trial, as Martinez had done. Thus, any disparities in sentencing were warranted. *See* 18 U.S.C. § 3553(a)(6).

Additionally, Martinez's argument that the district court relied on her demeanor at trial in imposing a harsher sentence is not borne out by the record. At the start of the sentencing hearing, the district court noted that Martinez had a cavalier attitude at trial and that it "may influence me." But, at sentencing, Martinez and her sister-in-law explained Martinez's smiles and laughter during witness testimony. After hearing that explanation, the district court stated that it would not consider her demeanor in imposing a sentence. Rather, the district court gave significant weight to Martinez's perjury. The court noted a need to protect the public and indicated that it had considered the § 3553(a) factors, the presentence investigation report, trial testimony, letters from Martinez's family and friends, and the arguments of counsel in imposing a sentence. It was within the

17

court's discretion to give greater weight to some factors over others, and thus, the district court committed no clear error of judgment. *See Williams*, 526 F.3d at 1322; *Gonzalez*, 550 F.3d at 1324; *Irey*, 612 F.3d at 1190.

Martinez's sentence was substantively reasonable because her within-guideline sentence reflected a reasonable weighing of the 18 U.S.C. § 3553(a) factors, including the need to avoid unwarranted sentencing disparities, and the district court—despite some comments earlier in the sentencing hearing—stated that it did not take into account Martinez's seemingly cavalier attitude at trial in imposing a sentence. Accordingly, we affirm.

**AFFIRMED.**