[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 19-10208
Non-Argument Calendar

————————————————

D.C. Docket No. 9:15-cr-80095-WPD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KURT ZAMOR,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(February 16, 2021)

Before JILL PRYOR, NEWSOM and ANDERSON, Circuit Judges.

PER CURIAM:

Kurt Zamor was indicted and convicted, following a jury trial, of two counts arising out of an illegal scheme to export firearms and ammunition from Florida to Haiti. We affirmed his convictions on direct appeal, concluding that there was sufficient evidence to support his convictions. *See United States v. Zamor*, 746 F. App'x 960, 962 (11th Cir. 2018) (unpublished). Zamor now appeals the district court's order denying his motion for a new trial based on newly discovered evidence. Zamor also appeals the denial of his requests for disclosure of grand jury testimony and *Brady/Giglio*[1] materials. After careful review, we affirm.

## I.    BACKGROUND

Zamor was indicted and charged with one count of knowingly delivering firearms to a common carrier for shipment to an unlicensed person without providing written notice to the carrier, in violation of 18 U.S.C. §§ 2, 922(e), and 924(a)(1)(D), and one count of fraudulently and knowingly attempting to export firearms and ammunition from the United States to Haiti contrary to 18 U.S.C. §§ 922(e) and 924(a)(1)(D), in violation of 18 U.S.C. §§ 2 and 554(a). After a four-day trial, the jury found Zamor guilty on both counts. To place Zamor's motion for a new trial in context, we begin by summarizing some of the key evidence adduced at trial. We then review the relevant post-conviction proceedings.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

2

**A. Trial Evidence**

The government presented the following testimony at trial.  Federal agents testified about their investigation of Zamor and search of a shipping container in his possession, in which they found guns and ammunition.  Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Examiner Tina Anderson testified that, according to ATF records, neither Zamor nor Marie Gilles, the intended recipient of Zamor's container, had a federal firearms license or was a firearms importer, manufacturer, dealer, or collector.  Anderson testified that she found no record or entry in ATF's database regarding Gilles during the relevant time.

Department of Homeland Security Investigations Special Agent Anderson Sullivan testified, and the government played a recording of an interview of Zamor that he conducted.  In it, Zamor admitted that he owned the shipping container and guns.[2]  But he maintained that the guns were not supposed to be loaded into the container and he was not present when movers he hired loaded the container with items from his storage unit.  Zharellis Holmes, a friend of Zamor's children's mother, Marie Mathurin, testified that she went with Mathurin to Zamor's storage unit to deliver some of Mathurin's furniture.  Holmes testified that Zamor was

---

[2] Jean Zamor, Zamor's father, was listed as the shipper of the container, but Zamor admitted it was his and that his father was shipping it on his behalf.

present while items from the storage unit were being loaded into the container and that the storage unit was empty when the movers left.

Kristine Teeters, an employee at "Monarch Shipping," the company Zamor hired to ship the container, testified that Monarch "contract[s] with people to . . . ship things [from the United States] to other countries." Doc. 111 at 164, 169.[3] Through Teeters, the government introduced the container's contents list and the letter of intent Monarch Shipping prepared for Zamor's shipment and submitted to U.S. Customs and Border Protection. The contents list for the container referred to "Monarch Shipping Lines, Inc.," and the letter of intent identified "Monarch Shipping Co. Ltd." as the shipping company. Doc. 147 at 25–26.

Zamor did not testify or present any witnesses in his defense. The jury found Zamor guilty on both counts.

### B. Post-Conviction Proceedings

### 1. Motion for a New Trial

Zamor appealed his convictions, arguing, among other things, that the government presented insufficient evidence to convict him of violating 18 U.S.C. § 922(e). We affirmed, concluding there was sufficient evidence to support Zamor's convictions. *See Zamor*, 746 F. App'x at 962. Shortly after our decision issued, Zamor filed in the district court a motion for a new trial based on four

---

[3] "Doc." numbers refer to the district court's docket entries.

pieces of allegedly newly discovered evidence.[4]  First, he contended that Sullivan's affidavit in support of the criminal complaint,[5] which stated that Gilles, the intended recipient of the firearms, was not a licensed firearms importer, manufacturer, dealer, or collector, was false because Sullivan did not have Gilles's date of birth and thus could not have searched for her in ATF's database.  He also observed that Sullivan's involvement in similar prosecutions showed Sullivan was aware that § 922(e) did not require "any ATF information to determine . . . licensing," and thus Sullivan knew he was "swear[ing] to a false material statement" in the affidavit.  Doc. 199 at 3–4.

Second, Zamor asserted that Marie Mathurin, his children's mother, would now provide testimony rebutting that of Holmes—testimony she would have provided earlier if not for Sullivan threatening her with arrest.  He submitted an affidavit from Mathurin stating that Holmes never saw anything being placed in the container other than boxes, a rug, and furniture and that Sullivan threatened to arrest her if she tried to testify on Zamor's behalf.

---

[4] Zamor filed a motion for a new trial based on three pieces of allegedly newly discovered evidence and then, ten days later, supplemented his motion with an additional piece of evidence.

[5] Before seeking an indictment, the government filed a criminal complaint against Zamor for attempting to unlawfully export firearms and ammunition through a common carrier.  The complaint included an affidavit signed by Sullivan recounting the government's investigation and stating that, according to ATF records, Zamor and Gilles were not licensed firearms importers, manufacturers, dealers, or collectors.

Third, Zamor contended that Sullivan improperly conversed with a juror on the first day of trial. This contention was based on a letter of support from his mother that was submitted to the district court with his sentencing memorandum.

Fourth, Zamor alleged that Monarch Shipping Lines, the company he hired to ship the container, was not a common carrier as required by 18 U.S.C. § 922(e). He relied on the response to his Freedom of Information Act (FOIA) request, which revealed that "Monarch Shipping Lines Inc." was not licensed by the Federal Maritime Commission (FMC). Doc. 204 at 1–2. Although FMC's records indicated "Monarch Shipping Co. Ltd." was a registered common carrier, Zamor argued that because the government presented evidence that he delivered the container to "Monarch Shipping Lines Inc.," it could not establish that he violated § 922(e).

## 2. Evidentiary Hearing

Before ruling on Zamor's motion for a new trial, the district court held a two-day evidentiary hearing.[6] At the beginning of the hearing, the court addressed the government's filing of *Brady/Giglio* forms. After reviewing the information *in camera*, the court determined that if during the hearing "something's opened the

---

[6] The day before the evidentiary hearing, the government filed law enforcement witness *Brady/Giglio* forms for Sullivan and ATF Agent Sara Connors and moved to seal them. The forms required the agents to disclose, among other things, "any pending complaints, investigations, or disciplinary actions . . . relating to the performance of [their] official duties." Doc. 231 at 3. That same day, the district court granted the government's motion to seal.

door to this information, or it's relevant," then the court would order disclosure. Doc. 242 at 10. The district court later issued an order finding that "[a]t this point, no disclosure [of the *Brady/Giglio* information] is appropriate." Doc. 236 at 1.

Zamor called several witnesses at the hearing. ATF Agent Sara Connors testified that Sullivan asked her to determine whether Zamor, Zamor's father, or Gilles had a firearms license. Connors said she did not personally search these names in ATF's database but instead asked a colleague to do so. Connors also confirmed that she had no identifying information for Gilles other than her name.

Zamor's mother, Gerta Voltaire, testified that during the trial she saw Sullivan having a "very friendly conversation" with a juror, but she did not hear what the two discussed. Doc. 242 at 27. She testified that when this conversation occurred, the judge, the lawyers, and the other jurors were in the courtroom. Voltaire testified that during the trial she informed Zamor's attorney about her observation.

Zamor also called Sullivan, who testified that Connors informed him that neither Zamor, Zamor's father, nor Gilles was a federally licensed firearms importer, manufacturer, dealer, or collector. He testified that he did not have Gilles's date of birth, social security number, or address and that he did not know who at the ATF ran Gilles's information. When asked about Monarch, Sullivan said he believed it was a common carrier, referencing a document that listed

7

"Monarch Shipping, Ltd." as a registered "VOCC" or "vessel operating common carrier." *Id.* at 55. Sullivan denied conversing with a juror and denied threatening Mathurin.

Before hearing testimony on the second day, the district court addressed Zamor's motion for disclosure of Sullivan's grand jury testimony.[7] The district court denied the motion as moot because the government had already provided Zamor with the requested grand jury testimony during trial.

Zamor recalled Sullivan, who testified that he searched for Gilles's name in a government database that "holds information on [firearms] licenses." Doc. 283 at 9. The search yielded no results, indicating Gilles had no firearms license. Next, Mathurin testified that when she arrived at Zamor's storage unit he was not there, and she did not know if the storage unit was empty. She then testified that federal agents "mistreated," "screamed at," and threatened to arrest her if she failed to tell the truth before the grand jury. *Id.* at 20. She also reported that after she testified before the grand jury, federal agents came to her home and threatened her again. On cross examination, Mathurin acknowledged she testified before the grand jury that she had not been threatened by the government. She also stated that had she been called by Zamor's attorney, she would have testified at trial. The

---

[7] At the end of the first day of the hearing, the court continued the proceedings for about two weeks. Between hearings, Zamor filed a motion for disclosure of Sullivan's grand jury testimony.

government then called Sullivan, who testified that he never threatened Mathurin or saw anyone else threaten her.

### 3. Denial of the Motion for a New Trial

After the hearing, the district court denied Zamor's motion for a new trial. The court addressed each piece of allegedly newly discovered evidence. First, regarding Sullivan's affidavit, the court concluded that Zamor had shown "[n]o impropriety" as there was no evidence that Gilles's name alone was insufficient to conduct a search; moreover, "there would be no remedy for any perceived problem with a [criminal] complaint when the Grand Jury later indicted Zamor and the trial jury later convicted him." Doc. 265 at 1. The court also emphasized that Zamor's complaints about the sufficiency of the evidence regarding whether Gilles was a licensed firearms dealer were "not newly discovered," as he had been levying these complaints "for years." *Id.* at 5. Additionally, Zamor had not shown that Gilles or "anyone [else] had a license in this case." *Id.*

Second, the court determined that neither Mathurin's affidavit nor her hearing testimony warranted a new trial. The court concluded that Mathurin's testimony was not "newly discovered evidence" because the defense had considered her as a possible witness at trial. *Id.* at 6. Additionally, she was not a credible witness because her testimony at the hearing contradicted her testimony before the grand jury that she had not been threatened. The court also found that

9

given the "strong circumstantial evidence in this case," Mathurin's testimony would not have changed the outcome. *Id.*

Third, the district court determined that Voltaire's letter did not warrant further action because "[a] friendly conversation [with a juror] does not warrant any relief." *Id.* The court found that "credible testimony" indicated "no such conversation occurred, particularly in open court during the trial" and Voltaire was "simply mistaken." *Id.* Further, the jury received instructions not to discuss the case with anyone, which the court presumed the jury followed.

Fourth, the court rejected Zamor's contention that Monarch Shipping Lines, Inc. was not a common carrier because "[i]t appears that they are." *Id.* (citing Doc. 215 at 9 (noting that Monarch Shipping Co. Ltd. is a "VOCC," a vessel operating common carrier)). Whether Monarch "is a Ltd. or an Inc.," the district court explained, "would not have impacted the result in this case . . . . [because] [n]o prejudice has been shown." *Id.* at 6–7.

This is Zamor's appeal.

## II.    STANDARD OF REVIEW

We review for an abuse of discretion a district court's denial of a motion for new trial under Federal Rule of Criminal Procedure 33, whether that denial is based on newly discovered evidence or on a *Brady/Giglio* violation. *United States v. Vallejo*, 297 F.3d 1154, 1163 (11th Cir. 2002). Likewise, we review a district

court's denial of a motion to disclose grand jury testimony for an abuse of discretion. *United Kingdom v. United States*, 238 F.3d 1312, 1320–21 (11th Cir. 2001).

"A district court abuses its discretion when it misapplies the law in reaching its decision or bases its decision on findings of fact that are clearly erroneous." *United States v. Scrushy*, 721 F.3d 1288, 1303 (11th Cir. 2013) (internal quotation marks omitted). "A factual finding is clearly erroneous when, upon review of the evidence, we are left with a definite and firm conviction a mistake has been made." *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015). Where the facts give rise to "two reasonable and different constructions, the factfinder's choice between them cannot be clearly erroneous." *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) (internal quotation marks omitted).

## III.    DISCUSSION

Zamor raises two arguments on appeal. First, he argues that the district court erred in denying his motion for a new trial based allegedly newly discovered evidence. Second, he contends that the district court improperly denied his requests for disclosure of grand jury testimony and *Brady/Giglio* materials, warranting a new trial. We consider each argument in turn.

**A. Motion for a New Trial Based on Newly Discovered Evidence**

A defendant may file a motion for a new trial based on newly discovered evidence, and the district court "may vacate [the] judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a), (b)(1). Although "[m]otions for a new trial are highly disfavored" and should be granted "only with great caution," evidence "that would afford reasonable grounds to question the integrity of the verdict" may be grounds for a new trial based on newly discovered evidence. *Scrushy*, 721 F.3d at 1304 (alterations adopted) (internal quotation marks omitted). Newly discovered evidence "need not relate directly to the issue of guilt or innocence to justify a new trial, but may be probative of another issue of law." *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (internal quotation marks omitted). For instance, "a *Brady* violation, as well as questions regarding the fairness or impartiality of a jury, may be grounds for a new trial." *Id.*

To succeed on a motion for a new trial based on newly discovered evidence, a movant must establish that: (1) the evidence was discovered after trial; (2) the movant's failure to discover the evidence was not due to his lack of diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is of such a nature that a new trial would probably produce a different result. *United States v. Caldwell*, 963 F.3d 1067, 1078–79

12

(11th Cir. 2020). "Failure to satisfy any one of those elements is fatal to a motion for a new trial." *United States v. Taohim*, 817 F.3d 1215, 1223 (11th Cir. 2013).

Zamor contends the district court abused its discretion by denying his motion for a new trial based on four pieces of allegedly newly discovered evidence: (1) Sullivan's and Connors's misrepresentation of Gilles's firearms licensure status, (2) Mathurin's affidavit stating that Sullivan threatened her to influence her testimony, (3) Voltaire's letter indicating that Sullivan had improper contact with a juror, and (4) documents suggesting that Monarch Shipping Lines Inc. is not a common carrier. We reject his arguments for the reasons below.

First, we are unpersuaded by Zamor's argument that the agents' alleged misrepresentations concerning Gilles's firearms license warrant a new trial. As an initial matter, Connors did not testify at trial and Sullivan did not testify about the licensure issue at trial, so they could not have given false trial testimony about that issue. Further, Zamor's evidence did not undermine the trial testimony of ATF Examiner Anderson, who testified that Gilles did not have a federal firearms license. At trial Anderson did not explain how she searched Gilles's information, and she was not asked about it. Thus, Zamor's contentions that Gilles's name alone was insufficient to conduct a search, or that Sullivan and Connors never "properly conducted a search on [] Gilles," Appellant's Br. at 27, do not contradict, and at best would "merely impeach[]," *Taohim*, 817 F.3d at 1223, Anderson's trial

13

testimony that Gilles lacked a federal firearms license.  Given Anderson's

testimony, it is not clear that Connors or Sullivan testified falsely at the evidentiary

hearing.  And Zamor presented no evidence that Gilles or Zamor had a firearms

license, so a new trial "would not likely produce a different result."  *Id.*

Second, we reject Zamor's argument that Mathurin's testimony warrants a

new trial.  Mathurin's testimony is not newly discovered evidence because she was

considered as a potential defense witness and was available to testify at trial.  *See*

*United States v. Beasley*, 582 F.2d 337, 339 (5th Cir. 1978) ("[W]here a party fails

to call a witness who was available during trial, the testimony of that witness

cannot be considered newly discovered evidence.").[8]  Moreover, we defer to the

district court's finding that Mathurin was not credible because her testimony that

she was threatened was contradicted by her grand jury testimony and Sullivan's

testimony.  *See Rivers v. United States*, 777 F.3d 1306, 1317 (11th Cir. 2015)

(noting that we defer to the district court's credibility determinations "unless the

court's understanding of the facts appears to be unbelievable" (internal quotation

marks omitted)).

Third, Zamor's juror-contact claim fails because Voltaire's testimony was

not newly discovered after the trial.  *See Taohim*, 817 F.3d at 1223 ("A new trial

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

based on newly discovered evidence is warranted if . . . the evidence [is] discovered following the trial[.]”).  Voltaire testified that during the trial she informed Zamor’s attorney of Sullivan’s communication with the juror.  And we defer to the district court’s finding that the credible testimony indicated no improper conversation between Sullivan and a juror had occurred.  *See Rivers*, 777 F.3d at 1317.

Fourth, we reject Zamor’s contention that the material he received in response to his FOIA request indicating “Monarch Shipping Lines Inc.” is not a common carrier warrants a new trial.  As Zamor concedes, FMC’s response to his FOIA request included documents establishing that “Monarch Shipping Co. Ltd.” is a registered common carrier.  At trial, the government presented evidence establishing that “Monarch Shipping Co. Ltd.” sought to ship Zamor’s container from Florida to Haiti.  And Monarch’s employee, Teeters, testified that Monarch “contract[s] with people to . . . ship things [from the United States] to other countries.”  Doc. 111 at 169.  Although Teeters did not distinguish between Monarch’s corporate entities, “[w]hether a transportation agency is a common carrier depends not upon its corporate character . . . but upon what it does.”  *Lone Star Steel Co. v. McGee*, 380 F.2d 640, 648 (5th Cir. 1967) (internal quotation marks omitted).  Evidence suggesting that “Monarch Shipping Lines Inc.” is not a registered common carrier in no way contradicts the evidence adduced at trial.

15

Thus, there is no reason to suggest a new trial would be "likely to produce an acquittal." *United States v. Hirst*, 668 F.2d 1180, 1185 (11th Cir. 1982). Additionally, Zamor provided no explanation as to why he or his attorney could not have submitted the FOIA request, or discovered this evidence, before trial through the exercise of due diligence. *See Caldwell*, 963 F.3d at 1078 ("[A] movant must establish that . . . [his] failure to discover the evidence was not due to his lack of diligence[.]").

We conclude that as to all four pieces of allegedly newly discovered evidence, Zamor has failed to establish he is entitled to relief. We therefore affirm the district court's denial of his motion for a new trial.

## B. Grand Jury and *Brady/Giglio* Claims

Zamor argues that the district court improperly denied his request for Sullivan's grand jury testimony and *Brady/Giglio* materials related to Sullivan and Connors because these materials were "crucial and necessary" for him to attack the agents' testimony regarding Gilles's firearms licensure status. Appellant's Reply Br. at 22–23. Accordingly, he contends, a new trial is warranted.[9] We disagree.

---

[9] The government asserts that we lack jurisdiction to consider Zamor's argument that the district court erred by denying his requests for grand jury and *Brady/Giglio* materials because he failed to file a notice of appeal with respect to these orders. *See* Appellee's Br. at 28 (citing Fed. R. App. P. 3(c)(1)(B) (requiring that the notice of appeal "designate the judgment, order, or part thereof being appealed")). We reject the government's argument. "[W]hen a notice of appeal designates the final, appealable order—and does not identify specific parts of that order for appeal—we have jurisdiction to review that order and any earlier interlocutory orders that produced the judgment." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*,

16

Zamor has not demonstrated a need for Sullivan's grand jury testimony. Parties seeking disclosure of grand jury testimony must "show[] that they have a compelling and particular need for the grand jury material in order to avoid an injustice and that their need for disclosure outweighs the secrecy need." *United States v. Aisenberg*, 358 F.3d 1327, 1349 (11th Cir. 2004). And "the district court has substantial discretion in determining whether grand jury materials should be released." *Id.* (internal quotation marks omitted). Zamor argues that he was entitled to Sullivan's grand jury testimony because it would show that "Sullivan lied [to] the grand jury" about Gilles's firearms licensure status. Appellant's Reply Br. at 22–23. Sullivan's supposed misrepresentations regarding Gilles's firearms license do not demonstrate a "compelling need" for disclosure that is "required by the ends of justice." *Aisenberg*, 358 F.3d at 1349 (internal quotation marks omitted). The jury heard Anderson's uncontested testimony that Gilles did not have a firearms license. What is more, the district court did not abuse its "substantial discretion" in denying the request as moot because the government had previously provided Zamor's trial attorney with Sullivan's grand jury

---

953 F.3d 707, 724–25 (11th Cir. 2020). Zamor's notice of appeal designated the district court's final order denying his motion for a new trial; he did not limit the scope of the appeal by "identify[ing] specific parts of that order for appeal." *Id.* at 725. Because the district court's orders denying Zamor's requests for grand jury and *Brady/Giglio* materials were not final orders "end[ing] the litigation on the merits," *Love v. Wal-Mart Stores, Inc.*, 865 F.3d 1322, 1325 (11th Cir. 2017) (internal quotation marks omitted), and they were relevant to the court's final order denying a new trial, we have jurisdiction to consider them. *See Auto. Alignment*, 953 F.3d at 725.

17

testimony. *Id.* On appeal, Zamor does not dispute the district court's mootness finding and offers no explanation for why he cannot obtain the testimony from his former counsel.

The district court also did not abuse its discretion in denying Zamor's request for *Brady/Giglio* materials. To establish a *Brady* violation, the defendant must show that: (1) the government possessed evidence favorable to the defendant, (2) the defendant did not possess the evidence and could not have obtained it with due diligence, (3) the government suppressed the evidence, and (4) there was a reasonable probability of a different outcome had the evidence been disclosed to the defendant. *Vallejo*, 297 F.3d at 1164. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish prejudice." *United States v. Brester*, 786 F.3d 1335, 1339 (11th Cir. 2015) (internal quotation marks omitted). "[T]o succeed on a *Giglio* challenge, the defendant must demonstrate that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *Vallejo*, 297 F.3d at 1163–64 (internal quotation marks omitted). Testimony is "material" if "there is a reasonable likelihood [it] could have affected the judgment of the jury." *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010).

After reviewing the sealed *Brady/Giglio* materials, we conclude that none of it indicates Sullivan or Connors provided false testimony. Further, Zamor has failed to establish that there is "reasonable probability" that the material would have changed the verdict. *Vallejo*, 297 F.3d at 1164. Again, the jury heard uncontested testimony from another ATF employee that Gilles did not have a federal firearms license. "[M]ere speculation or allegations" that the sealed materials are exculpatory or might affect the outcome of the trial are insufficient. *United States v. Jordan*, 316 F.3d 1215, 1252 n.81 (11th Cir. 2003). Thus, we discern no reversible error in the district court's denial of Zamor's requests for grand jury testimony and sealed *Brady/Giglio* materials.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Zamor's motion for a new trial and requests for grand jury testimony and sealed *Brady/Giglio* materials.

**AFFIRMED.**