[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14721
Non-Argument Calendar
_____

D.C. Docket No. 3:18-cr-00047-BJD-PDB-1

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

versus

BRIAN JAMES HOLLAND,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 6, 2019)

Before MARCUS, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Brian Holland appeals his conviction for aggravated sexual abuse by force, in violation of 18 U.S.C. § 2241(a)(1).  First, he contends that the evidence presented at trial was insufficient to support his conviction.  Second, he argues that the district court abused its discretion by allowing irrelevant and prejudicial testimony regarding the dreadlocks he had at the time of the incident.  Third, Mr. Holland asserts that the government's remarks during closing arguments about his dreadlocks and changed appearance were so inflammatory and prejudicial that they amounted to prosecutorial misconduct and deprived him of a fair trial.  We affirm.

**I**

A grand jury indicted Mr. Holland on one count of aggravated sexual abuse by force, in violation of 18 U.S.C. § 2241(a)(1).  The indictment alleged that Mr. Holland digitally penetrated a female (I.R.) while on a cruise ship within the special maritime jurisdiction of the United States.[1]

Mr. Holland pled not guilty.  At trial, the parties presented the following evidence to the jury.

---

[1] I.R. was over 18 years old at the time of the incident, but she is unable to read or write and is only capable of doing fourth-grade schoolwork.

**A**

On February 27, 2018, while on a Carnival cruise ship, Mr. Holland sat next to I.R. in the ship's hot tub.  At the time, Mr. Holland—who is white—had dreadlocks.

I.R. testified that she tried to move away from Mr. Holland several times, but he continuously moved closer to her and placed his arm around her.  I.R. said that she told Mr. Holland "stop" and "don't do that" when he placed his arm around her.  According to I.R., Mr. Holland rubbed her legs and then digitally penetrated her vagina before she moved his arm away.  She stated that it "hurt" inside "[her] private area" when Mr. Holland did this.

When the government asked I.R. to identify Mr. Holland, he offered to stipulate that he was the person with her in the hot tub.  But the district court allowed I.R. to identify him.  She had to step out of the witness stand to do so because Mr. Holland looked different without the dreadlocks he had at the time of the incident.  On cross-examination, I.R. testified that Mr. Holland had "crazy hair on the cruise but looked different at trial."

A.T., an eyewitness who was also in the hot tub at the time, testified that I.R. "looked uncomfortable" while Mr. Holland had his arm around her "[b]ecause she would try and scoot away," but Mr. Holland would pull her back in.  She explained that she was unable to see I.R.'s reaction to Mr. Holland's advances because I.R.

3

was wearing sunglasses. She did not witness any struggle or pushing between I.R. and Mr. Holland.

K.L., another eyewitness, testified that I.R. seemed uncomfortable because she would move away from Mr. Holland each time that he would move closer to her and place his arm around her. She did not hear I.R. tell Mr. Holland to stop. She also could not see I.R.'s reaction because of her sunglasses, and she did not see a crime occur. K.L. explained that the bubbles created by the hot tub jets obstructed everyone's view of what occurred underwater.

The government asked A.T. and K.L. (both of whom were minors) to identify Mr. Holland as the man sitting next to I.R. in the hot tub. Both times, Mr. Holland attempted to stipulate that he was the person sitting next to I.R., but the district court allowed both witnesses to identify Mr. Holland to the jury.

Agent Kurt Limpert testified that the alleged offense occurred on the high seas and was committed by an American citizen against an American citizen. As a result, it fell under federal jurisdiction.

## B

I.R. testified that after the incident she left the hot tub and asked guest services to locate her mother, Janie Crawford. Ms. Crawford testified that when she arrived at the guest services desk, I.R. was "horrified," "livid," "scared," and "let out this loud screeching cry."

The government asked Ms. Crawford whether she knew how to make dreadlocks and whether the process is the same for black and white people. She responded that, black people only have to twist and wash their hair to create dreadlocks. White people, on the other hand, need "to twist it, then they have to kink it up, and after a while it [will] start matting up," and that dreadlocks take years to grow.

The ship's onboard physician, Dr. Vusumzi Mbuthuma, performed a physical examination of I.R. Dr. Mbuthuma's examination revealed minor scrapes on I.R.'s thighs, an abrasion on and around her urethral opening, and abrasions on her vaginal vestibule and vaginal opening. The examination also revealed that the injuries were fresh, "as indicated by fresh blood underneath the soft tissues." Dr. Mbuthuma testified that I.R.'s injuries were "consistent with blunt trauma" and with forceful digital penetration. He also explained, however, that I.R.'s injuries could have resulted from consensual sexual contact, some other medical condition, or self-inflicted scratching.

Judy Malmgren, a board-certified forensic nurse examiner, testified on Mr. Holland's behalf. She explained that Dr. Mbuthuma's report was incomplete because he failed to take photographs of I.R.'s genital area, and thus posited that the jury should not rely on it. She further explained that self-inflicted scratching, clothes

rubbing on the vaginal area, or wetness in the genital area could also have caused the abrasions identified in Dr. Mbuthuma's report.

## C

The district court denied Mr. Holland's motions for judgment of acquittal after each side had rested its case. During closing arguments, the government highlighted Mr. Holland's changed appearance between the time of the cruise and trial:

> Why is Brian Holland changing his appearance from the date of the assault to the date he appears here in this courtroom to face you? Ms. Yazgi said it was because he wanted to show respect to the Court, get a haircut, buy some new clothes. … Why -- why would he cut this hair? Ms. Crawford, I.R.'s mother, told you this isn't easy to do, to grow this hair. This takes some time and some effort, some twisting and some tangling and some matting and some not washing, and it can take years or so to grow this hair. He worked on this hair. This was him. This was his image. This was his persona. This is Brian Holland. And he didn't just change its length and its appearance. He changed it from blond to brown. And why did he do that? Why change the most distinguishing feature of your appearance after you've been indicted for a federal crime in which there were eyewitnesses? To make yourself more presentable to you or to hide the hot tub jerk, the sexual assaulter? To make it more difficult for those children to take the stand and say, "That's the man I saw."

D.E. 80 at 69–70. Defense counsel, in contrast, explained that Mr. Holland changed his appearance out of respect for the court and not as an attempt to confuse the witnesses. Defense counsel did not object any portion of the government's closing arguments.

6

The jury returned a verdict of guilty. The district court sentenced Mr. Holland to 120 months' imprisonment and five years' supervised release.

## II

Mr. Holland argues that the district court erred when it denied his motion for judgment of acquittal because the evidence presented at trial was insufficient to support his conviction. We disagree.

We review *de novo* whether there is sufficient evidence to support a conviction. *See United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010). We view the record in the light most favorable to the government, resolving all reasonable inferences in favor of the verdict. *See id*. We will not reverse a conviction unless no reasonable trier of fact could find guilt beyond a reasonable doubt. *See id*.

Credibility questions are the province of the jury, and we will assume that the jury resolved all such questions in a manner supporting its verdict. *See United States v. Garcia-Bercovich*, 582 F.3d 1234, 1238 (11th Cir. 2009). Importantly, the evidence need not exclude every reasonable hypothesis of innocence for a reasonable jury to find guilt beyond a reasonable doubt. *See United States v. Cruz-Valdez*, 773 F.2d 1541, 1545 (11th Cir. 1985) (en banc). A jury is free to choose among alternative, reasonable interpretations of the evidence. *See id*.

Under 18 U.S.C. § 2241(a)(1), an individual is guilty of aggravated sexual abuse by force when that person (1) is in the special maritime and territorial jurisdiction of the United States, (2) knowingly causes another person to engage in a sexual act, and (3) uses force to complete the offense. *See, e.g., United States v. Shaw*, 891 F.3d 441, 447–48 (3d Cir. 2018); *United States v. Cobenais*, 868 F.3d 731, 739 (8th Cir. 2017).

Here, viewing the evidence in the light most favorable to the government, a reasonable factual basis supports Mr. Holland's conviction. Agent Limpert's testimony that the alleged sexual abuse occurred in the special maritime jurisdiction of the United States satisfied the first element of the offense. As to the second and third elements, I.R. testified that Mr. Holland digitally penetrated her as she told him to stop and pushed his arm away. A.T. and K.L. did not see the alleged sexual abuse, but they testified that I.R. moved away from Mr. Holland on several occasions, and that he continued to either move closer to her or pull her closer to him. Ms. Crawford, moreover, testified that I.R. was terrified and crying after her encounter with Mr. Holland. Finally, Dr. Mbuthuma stated that I.R.'s vaginal injuries were consistent with forceful digital penetration. This evidence was sufficient.

Mr. Holland nevertheless argues that the district court erred in denying his motion for judgment of acquittal because the government's evidence was undermined by contradictory testimony. He highlights that A.T. and K.L. testified

8

that they saw no struggle between himself and I.R. and that they did not witness any assault. He also stresses Dr. Mbuthuma's testimony that I.R.'s injuries "could have resulted from consensual sexual contact, or a medical condition causing I.R. to scratch the area." Finally, Ms. Malmgren explained that, according to Dr. Mbuthuma's report, I.R. could have inadvertently self-inflicted her injuries, and other medical complications could have also caused her injuries. She also testified that Dr. Mbuthuma's report was incomplete and unreliable because he failed to include photographs of I.R.'s vaginal injuries.

Mr. Holland's argument fails. Credibility questions are reserved for the jury, *see Garcia-Bercovich*, 582 F.3d at 1238, and the jury was permitted to reject Mr. Holland's interpretation of the evidence. "When all of the relevant evidence and testimony is combined, sufficient evidence exists to support a jury's conclusion" that Mr. Holland knowingly caused I.R. to engage in a sexual act by force. *See id.* The jury was free to and did, in fact, choose an alternative, reasonable interpretation of the evidence. It chose to believe I.R.'s testimony that Mr. Holland repeatedly pulled her closer to him, ignored her requests for him to stop, and used force to digitally penetrate her. It credited A.T.'s and K.L.'s testimony that Mr. Holland kept moving closer to I.R. each time she moved away, making her visibly uncomfortable. It elected to believe Ms. Crawford's characterization of I.R.'s reaction immediately following her experience in the hot tub. Finally, it chose to accept Dr. Mbuthuma's

testimony that I.R.'s injuries were consistent with forceful digital penetration and not accepted Ms. Malmgren's testimony that I.R.'s injuries could have been caused by something besides forceful digital penetration.

In sum, viewing the evidence in the light most favorable to the government, the jury could reasonably find Mr. Holland guilty of aggravated sexual abuse by force beyond a reasonable doubt.  Accordingly, the district court did not err when it denied Mr. Holland's motions for judgment of acquittal.

## III

Mr. Holland argues that the district court abused its discretion by allowing testimony regarding his dreadlocks at the time of the incident because it was irrelevant and overly prejudicial.  We are not persuaded.

We normally review "the district court's ruling on admission of evidence for abuse of discretion." *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000).  But "[w]here a defendant fails to clearly state the grounds for an objection in the district court . . . [we are] limited to reviewing for plain error." *United States v. Zinn*, 321 F.3d 1084, 1087 (11th Cir. 2003).  A party may establish plain error by showing that (1) there was an error; (2) the error was plain or obvious; (3) the error affected his substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affected the fairness, integrity, or public reputation of the district court proceedings.  *See United States v. Olano*, 507 U.S. 725, 732 (1993).  An error is

10

plain only if it is clear or obvious under current law.  *See United States v. Daniels*, 685 F.3d 1237, 1251 (11th Cir. 2012).

Evidence is relevant if it has any tendency to make a fact more or less probable and that fact is of consequence in determining the action.  *See* Fed. R. Evid. 401. Irrelevant evidence is inadmissible.  *See* Fed. R. Evid. 402.  Relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.[2]

Generally, the prosecution is entitled to decide how to prove its case, and a defendant may not stipulate or admit his way out of the full evidentiary force of the case against him.  *See generally Old Chief v. United States*, 519 U.S. 172, 186–88 (1997).  Furthermore, Rule 403 does not preclude the admission of certain evidence simply because other evidence addresses the same issues.  *See United States v. Eyster*, 948 F.2d 1196, 1212 (11th Cir. 1991).  A party's offer to stipulate is only one factor that the district court should consider in making a determination under Rule 403.  *See Old Chief,* 519 U.S. at 183; *United States v. O'Shea*, 724 F.2d 1514, 1516 (11th Cir. 1984).

---

[2] Exclusion of evidence under Rule 403 is an extraordinary remedy that should be used only sparingly.  *See United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003).  Furthermore, under Rule 403 the balance is generally in favor of admissibility, and we "look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact."  *Id*.  (internal quotation marks omitted).

Here, Mr. Holland failed to assert a clear and unequivocal objection to the admission of testimony about his dreadlocks while on the cruise. When the government elicited testimony about Mr. Holland's dreadlocks, he did not object, but only offered to stipulate that he was the man in the hot tub with I.R. Thus, we review the district court's admission of the dreadlocks evidence for plain error.

The testimony about the dreadlocks was relevant because it had a tendency to make it more probable that Mr. Holland was the person in the hot tub. I.R., A.T., and K.L. all identified Mr. Holland as the man in the hot tub, but their identification was made more difficult because Mr. Holland had changed his appearance before trial.

Furthermore, the witnesses' testimony about Mr. Holland's dreadlocks potentially enhanced the government's version of events. The record demonstrates that I.R. is developmentally disabled and struggles to form coherent stories. Her ability to recall and describe Mr. Holland's dreadlocks could be viewed as an indication that she was telling the truth about the assault. A.T.'s and K.L.'s descriptions of Mr. Holland's dreadlocks similarly reinforced their credibility, especially considering that they were minors.

The government also elicited testimony from Ms. Crawford about the process of growing dreadlocks. It then used her testimony —that "it takes years" for a white person like Mr. Holland to grow dreadlocks—and the fact that Mr. Holland cut his

dreadlocks before trial, to suggest his consciousness of guilt.  Mr. Holland argues that this evidence was "wholly irrelevant," but the government "may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt."  *Old Chief*, 519 U.S. at 188.  Ms. Crawford's testimony was relevant because it had a tendency to make it more probable that Mr. Holland cut his dreadlocks to make it more difficult for any witnesses to identify him in court.

Accordingly, the district court did not commit plain error when it failed to exclude the evidence regarding Mr. Holland's dreadlocks.

## IV

Finally, Mr. Holland contends that the government's remarks during closing arguments about his dreadlocks were so inflammatory and prejudicial that they amounted to prosecutorial misconduct and deprived him of a fair trial.  We disagree.

Generally, we review determinations regarding prosecutorial misconduct *de novo*. *See United States v. Nerey*, 877 F.3d 956, 969 (11th Cir. 2017).  But if the defendant failed to specifically object to arguments that he now challenges on appeal, we review only for plain error.  *See United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997).  Here, Mr. Holland failed to object to the government's alleged misconduct during closing argument.  As noted earlier, we will reverse only if there was an error that was plain, that affected substantial rights, and that seriously

affected the fairness, integrity, or public reputation of judicial proceedings. *See Olano*, 507 U.S. at 732.

To establish prosecutorial misconduct based on remarks in closing argument, the challenged remarks must have been improper and must have prejudicially affected the defendant's substantial rights. *See Nerey*, 877 F.3d at 970. We generally consider four factors: (1) whether the challenged comments had a tendency to mislead the jury or prejudice the defendant; (2) whether the comments were isolated or extensive; (3) whether the comments were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof establishing the defendant's guilt. *See United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014).

Closing arguments are used to assist the jury in analyzing the evidence. *See id*. Although a prosecutor may not exceed the evidence presented at trial during closing argument, he may state inferences drawn from the trial evidence and urge the jury to draw conclusions from that evidence. *See id*.

To assess the prejudicial impact of a prosecutor's statements, we must evaluate them in the context of the trial as a whole and assess their probable impact on the jury. *See United States v. Taohirn*, 817 F.3d 1215, 1224 (11th Cir. 2013). A prosecutor's improper remarks affect a defendant's substantial rights when there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different. *See Nerey*, 877 F.3d at 970. A prejudicial remark may be

counteracted by substantial evidence establishing guilt or rendered harmless by curative jury instructions. *See id.*

The district court did not plainly err. Simply stated, the prosecutor's arguments about why Mr. Holland cut his hair were not improper. The prosecutor used evidence about Mr. Holland's changed appearance for two reasons: (1) to explain why I.R. had a difficult time identifying Mr. Holland; and (2) to illustrate how severely his actions on the cruise affected the witnesses such that they could still identify him notwithstanding his changed appearance. The prosecutor's arguments were fair comments on the evidence and did not mislead the jury. The prosecutor highlighted the in-court identification of Mr. Holland by I.R., A.T., and K.L., as well as Ms. Crawford's testimony about the uniquely difficult and long process for a white person to grow dreadlocks. In doing so, the prosecutor argued to the jury that Mr. Holland abandoned a physical attribute that took him years to achieve in hopes of encumbering the witnesses' ability to identify him.

## V

For the foregoing reasons, we affirm Mr. Holland's conviction.

**AFFIRMED.**